UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 09-30101-RAL |
| Plaintiff, | \* | |
| | \* | ORDER ADOPTING REPORT AND |
| -vs- | \* | RECOMMENDATION |
| DOMINIC STONEMAN, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Defendant filed a Motion to Suppress (Doc. 20) concerning statements he allegedly made to tribal police officer Kory Provost ("Officer Provost") and special agent Calvin Waln, Jr. ("Officer Waln") on June 10, 2009. Defendant argues that the statements were involuntary, in violation of his due process rights under the Fifth Amendment, and taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The matter is before this Court on the Report and Recommendation (Doc. 38) of United States Magistrate Judge, Mark A. Moreno. After conducting an evidentiary hearing on February 18, 2010, Magistrate Judge Moreno has recommended that Defendant's Motion to Suppress the statements be granted in part and denied in part. Magistrate Judge Moreno orally advised counsel of his ruling and filed his Report and Recommendation on March 2, 2010.

Copies of the Report and Recommendation were served upon the parties as required by 28 U.S.C. § 636. In considering a magistrate judge's recommendation on a dispositive matter, such as a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). No objections have been filed to the Report and Recommendation. This Court has conducted a de novo review of the record even though de novo review is not required when no objections have been filed.

## FACTS

On the morning of June 10, 2009, tribal police officers Iver Crow Eagle, III, Anthony Long Soldier, and Officer Provost responded to a reported fire at an abandoned house in the Soldier Creek community at approximately 2:15 a.m. on June 10, 2009. (T. 5).[1] During the investigation that morning, the officers received information that Defendant may have started the fire. (T. 7). At the motions hearing, Officer Provost testified that the person who reported the house fire said that Defendant caused the fire. In addition, Officer Provost explained that one of the women interviewed at the scene of the fire explained that Defendant had borrowed a lighter and walked towards the house at issue. (T. 7). The woman also reported that Lisa Black Lance ("Black Lance"), Defendant's girlfriend, confronted Defendant after the fire started and asked him "why he did that." (T. 9). The officers notified Officer Waln of the information regarding the Defendant's involvement, and based on this information, the officers determined that they had probable cause to arrest the Defendant. (T. 10). Officers Waln and Provost thereafter proceeded to the residence of Black Lance where Defendant was believed to be living.

The officers knocked on the front door at Black Lance's residence, but their knocks were unanswered. (T. 10). The two then knocked on the back door. Officer Provost looked in a window adjacent to the door and saw Defendant. Defendant walked away after seeing Officer Provost at the window. Officer Provost then knocked three more times, but no one opened the door. (T. 11). Officers Waln and Provost then entered Black Lance's residence to search for Defendant without either a warrant or consent. (T. 11, 58).

Officer Provost testified that once he and Officer Waln were inside the house, he asked Black Lance where Defendant was. She did not respond to his inquiry, so Officers Provost and Waln began searching the upstairs bedrooms for Defendant. (T. 11). The officers then proceeded downstairs. Officer Provost found Defendant lying on a mattress in one of the downstairs bedrooms. Defendant was then arrested by the two tribal officers for the arson, which is the subject of the present federal prosecution

---

[1] Any references to the transcript of the motions hearing will be "T" followed by the page number or numbers.

At the motions hearing, Officer Provost testified that, upon finding Defendant, he told Defendant that he was under arrest, placed his hands in handcuffs, and read him his Miranda rights as soon as he put the handcuffs on him. (T. 12). Officer Waln testified that he heard Officer Provost reading Defendant his Miranda rights. (T. 41). Officer Provost testified further that he did not ask Defendant any questions prior to reading Defendant his Miranda rights, and that Defendant did not say anything to Officer Provost prior to him reading Defendant his Miranda rights. (T. 13).

After reading him his rights, Officer Provost asked Defendant if he understood his rights. Defendant responded in the affirmative, and then said, "even if I didn't do it." (T. 13). Officer Provost testified that he and Officer Waln then took Defendant upstairs where Defendant asked Black Lance to "tell them I didn't do it." (T. 14).

Defendant was then placed in the patrol car, and after arriving at the jail, told Officer Provost that "he wasn't around." (T. 14). Officer Provost then asked Defendant where he was at the time of the fire and Defendant responded that he was in Mission. (T. 15). Officer Provost then removed Defendant's handcuffs and noticed a cut on his hand, whereupon he asked Defendant what he had done to his hand. Defendant told him he had cut it on some glass. (T. 15). At the time of arrest, Officer Provost detected the smell of alcohol on Defendant. (T.15). A Preliminary Breath Test ("PBT") was administered resulting in a reading of .133.

At approximately 3:30 p.m. that day, Officer Waln met with Defendant at the Rosebud Police Department. Officer Waln testified that he explained to Defendant that his purpose was to discuss the house fire and he needed to advise him of his Miranda rights. (T. 45). Defendant initialed that he understood his Miranda rights on an advice of rights form and that he was willing to waive them, then signed and dated the form. (T. 45).

Officer Waln testified at the motions hearing that he did not smell alcohol on Defendant. (T. 54). He did not make any threats against Defendant or any promises to him during the interview. (T. 61-62). The interview lasted ten minutes, or until 3:40 p.m. (T. 56). During the interview, Defendant stated that he left the Soldier Creek community after seeing smoke coming from the house set on fire in this case. (T. 48). According to Officer Waln's testimony,

3

Defendant denied involvement with the fire and attempted to shift the blame to other teenagers. (T. 47-48, 59-60).

N.R., a juvenile witness for Defendant, testified at the motions hearing that he was in the downstairs bedroom when Defendant was arrested on the morning of June 10, 2010, and did not hear the officers read Defendant his Miranda rights. (T. 71-72).

## DISCUSSION

A.     Fruit of Illegal Arrest Analysis

The Fourth Amendment to the United States Constitution prohibits police officers from entering a private residence without a warrant and without consent in order to make a routine felony arrest. See Payton v. New York, 445 U.S. 573 (1980). Given the extremely intrusive nature of a police entry into a private home, the Supreme Court has found that such an intrusion is constitutional only under those circumstances where a neutral and detached official certifies that there is probable cause to make such an arrest prior to the intrusion. Id. at 586. A warrantless and nonconsensual entry into a suspect's home in order to effectuate a general felony arrest violates the Fourth Amendment. Id. at 576. The exclusionary rule generally bars admission of evidence obtained in violation of the Fourth Amendment. However, the exclusionary rule does not automatically bar admission of statements made following a Payton violation. When a warrantless arrest takes place, the subsequent statements will not be suppressed under the exclusionary rule if the arresting officers had probable cause to arrest. New York v. Harris, 495 U.S. 14 (1990).

Defendant was arrested by tribal officers on June 10, 2009. This arrest within the home of Black Lance was warrantless and without consent, and therefore, under Payton, occurred in violation of the Fourth Amendment. Defendant made statements subsequent to this arrest while in the residence, on the way to the police car, and at the jail. Defendant moved for the suppression of these statements on the basis that they are fruit of the illegal arrest.

Although confessions that stem from unlawful arrests made without probable cause are tainted from the arrest and must be suppressed, see Taylor v. Alabama, 457 U.S. 687 (1982), Dunaway v. New York, 442 U.S. 200 (1979), Brown v. Illinois, 422 U.S. 590 (1975), if a confession stems from an arrest, albeit unlawful, which was made *with probable cause*, the

4

confession is not tainted and excluded under the "fruit of the poisonous tree" doctrine, see Harris, 495 U.S. at 18 (declining to apply the exclusionary rule to a statement made outside the defendant's home when police officers had probable cause to arrest defendant, despite the officers unlawfully arresting him in his home without a warrant or consent). This distinction is based on the officers having justification to question a defendant prior to the unlawful arrest made with probable cause. Id. at 20. When such justification exists, the questioning that takes place subsequent to the arrest is not an exploitation of the unlawful entry to the house. Id. Defendant's statements made in the residence, on the way to the jail, and at the jail, are not the product of the illegal entry into the home, because the arresting officer had probable cause to arrest Defendant and thus he was not unlawfully in custody. Therefore, these statements will not be suppressed due to the Payton violation.

B.   Voluntariness Analysis

Defendant argues that statements made to Officer Provost in the patrol car and to Officer Waln during an interview at the jail were involuntary and therefore must be suppressed under the Fifth Amendment. The government must prove by a preponderance of the evidence that Defendant's statement made to police was voluntary. United States v. Astello, 241 F.3d 965, 966 (8th Cir. 2001). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir.) cert. denied, 534 U.S. 924 (2001)). This Court looks at the totality of the circumstances, Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001), including the conduct of the agents and a defendant's capacity to resist pressure to confess, the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. See LeBrun, 363 F.3d at 726. Factors which this Court may weigh in determining whether a statement is voluntary include the prolonged nature of the questioning, LeBrun, 534 U.S. at 726, the defendant's subjective understanding of his Miranda rights, Simmons, 235 F.3d at 1133-34, the age of the defendant, his lack of education, or his low intelligence, United States v. Gallardo-Marquez, 253 F.3d 1121, 1123-24 (8th Cir. 2001) cert. denied, 534 U.S. 1031 (2001), the defendant's prior contact with

5

law enforcement, Gallardo-Marquez, 253 F.3d at 1124, and the use of physical punishment such as deprivation of food or sleep, Hall v. Wolff, 539 F.2d 1146, 1150-51 (8th Cir. 1976).

This Court has conducted a de novo review of the record. Throughout the analysis, the Court evaluated whether the facts surrounding the questioning of the Defendant while he was locked in the police cruiser and later when he was interviewed at the jail demonstrate that the conduct of Officer Provost or Officer Waln overbore the Defendant's will and capacity for self-determination. Considering all of the factors, the Court cannot find that Officer Provost overbore Defendant's will and capacity for self-determination, and therefore, finds that Defendant's statements were voluntary. In his argument, Defendant relies heavily on the fact that Defendant was both tired and intoxicated during the questioning in the patrol car. However, whether a statement is involuntary is judged by the totality of the circumstances, including both the characteristics of the accused and the conduct of the officers. LeBrun, 363 F.3d at 724. Although the mental competence of a defendant is relevant, it is only one of several factors. Furthermore, Defendant's intoxication is not sufficient evidence alone that the statement was involuntary in this case. See United States v. Brown, 535 F.2d 424, 427 (8th Cir. 1976) (standing for proposition that custodial statements are not per se involuntary because of intoxication). In Brown, the district court evaluated whether by reason of intoxication or some other factor, the defendant's will was overborne or whether his statements were the product of a rational intellect and free will. Id. The Brown court found that the defendant's capability to find his driver's license, lie about his license misidentification, and climb stairs supported the finding that his statements were freely and voluntarily made, despite his intoxication. Id.; see also United States v. Contreras, 372 F.3d 974 (8th Cir. 2004), cert. denied, 540 U.S. 902 (2005) (finding that a defendant's use of methamphetamine shortly before being arrested does not nullify the defendant's ability to voluntarily consent); United States v. Adkins, 2008 WL 5110551 (W.D. Mo. 2008) (finding no basis to suppress a Defendant's statements notwithstanding assertion that his will was prone to be overborne due to his high blood sugar). Here, Defendant's ability to climb the stairs of Black Lance's residence and walk to the patrol car cuts against the argument that he was unable to voluntarily make statements due to the effects of intoxication or fatigue.

Therefore, this Court finds that Defendant's responses to Officer Provost's questions were voluntary under the Fifth Amendment.

Defendant also argues that the statements made to Officer Waln during an interview at the Rosebud jail were involuntary. Defendant was given a Miranda warning after Officer Provost brought him to the police chief's office at the jail. Defendant confirmed that he understood his rights and wished to waive them. He formalized this understanding and waiver by signing an advice of rights form. Defendant moves this Court to suppress the statements made during the subsequent interview with Officer Waln on the basis that they were involuntary. Defendant again argues that his intoxicated state renders his statements involuntary and thus inadmissible.

As with the earlier statements, this Court applies the totality of the circumstances test in determining whether the statement is voluntary, including the conduct of the officers and the capacity of the suspect to resist pressure to confess. LeBrun, 363 F.3d at 724. The facts surrounding the interview at the Rosebud jail do not show coercive activity by Officer Waln. The questioning of Defendant lasted only between five and ten minutes. Officer Waln testified that prior to the interview, Defendant was advised of his Miranda rights and waived his Miranda rights. (T. 53). The Eighth Circuit has placed significant weight on the fact that a defendant had a subjective understanding of his Miranda rights at the time of the interview. See LeBrun, 363 F.3d at 726; Simmons, 235 F.3d at 1132-34. As discussed above, Defendant was advised of his Miranda rights, he was read those rights, he read the rights himself, he read the waiver out loud to Officer Waln, and he signed the form waiving his rights. This Court has conducted a de novo review of the facts surrounding the interview and finds no evidence that Defendant's understanding was impaired when he waived his rights. Although Defendant argues that his statement and waiver of rights were involuntary because of intoxication, the evidence does not support this argument. The questioning of Defendant at the Rosebud jail began at approximately 3:33 p.m. on June 10, 2009, approximately seven hours after Defendant registered a .133 blood alcohol on the PBT. After considering the characteristics of Defendant and the nature of the interrogation, this Court concludes that the statements made by Defendant to Officer Waln were voluntary and the officer's conduct and interviewing tactics did not overbear his free will and self-determination. Furthermore, the Court finds that Defendant's waiver of his Miranda rights

was voluntary, as he was advised of these rights and waived them in writing. Therefore, these statements are admissible at trial.

C. Innis Analysis

This Court has found that the statements made to Officer Provost were not involuntary, but suppresses them nonetheless on the basis that Defendant did not waive his Miranda rights before making the statements to Officer Provost. The Fifth Amendment to the United States Constitution states that a defendant cannot be "compelled in any criminal case to be a witness against himself." The Supreme Court of the United States held in Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), that a suspect under custodial interrogation must be given notice of his Fifth Amendment rights against self-incrimination. Only in those circumstances where the suspect knowingly and intelligently waives his privilege against self-incrimination and his right to counsel will a statement taken through custodial interrogation be admissible. Id. at 475.

Defendant was advised of his Miranda rights when Officers Provost and Waln arrested him in the basement of Black Lance's residence on the morning of June 10, 2009. As discussed above, Officer Provost testified that he advised Defendant of his Miranda rights immediately after placing his hands in handcuffs. (T. 12). Officer Waln also testified that he heard Officer Provost read the Defendant his Miranda rights as he arrested him. (T. 41). Defendant presented testimony at the suppression hearing from a juvenile, N.R. that Officer Provost did not give a Miranda warning to Defendant at the time of Defendant's arrest. The Court acknowledges that Officer Provost and Waln's testimony conflicted with what N.R. testified to during the suppression hearing. Magistrate Judge Moreno listened to the testimony and found Officer Provost and Waln's testimony to be credible. The Court is entitled to give weight to the credibility determination of the magistrate judge. United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995).

The government bears the heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. "[W]here in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to

8

invoking his right to remain silent when interrogated." Id. at 475-76. Defendant's answering of two questions posed by Officer Provost does not amount to sufficient evidence of a waiver of his Miranda rights. Any response to a custodial interrogation which lacks the procedural safeguards required by Miranda will be excluded as substantive evidence. Id. However, statements made in response to the custodial interrogation may be admitted for impeachment purposes if the defendant testifies at his trial, so long as the statements were voluntary. See Harris v. New York, 401 U.S. 222, 226 (1971); United States v. Havens, 446 U.S. 620, 627 (1980).

1. Statements Made in Response to Interrogation

Under Harris, statements made by a defendant while in custody and in response to questions posed that are likely to elicit an incriminating statement are admissible at trial as impeachment evidence only. At the jail, after the Defendant had voluntarily stated, "I wasn't around," Officer Provost asked Defendant where he was. Defendant responded, "in Mission." Also at the jail, Provost asked Defendant "what happened to your hand?" Defendant responded that he had cut it on a piece of glass.

The questions posed by Officer Provost were reasonably likely to elicit an incriminating response from Defendant. Under the analysis set forth in Rhode Island v. Innis, 446 U.S. 291 (1980), an interrogation is subject to Miranda if the defendant is in custody and if the police should know their words or actions are "reasonably likely to elicit an incriminating response," that is, any inculpatory or exculpatory response which the government may seek to introduce at trial. Id. at 301. Whether the words or actions are "reasonably likely to elicit an incriminating response" hinges on the perceptions of the defendant and not the intent of the police. Id. Included in the definition of a custodial interrogation is of course explicit questioning initiated by police. Id. at 300-01 (finding that interrogation occurs when a law enforcement officer engages in "either express questioning or its functional equivalent").

Here, Officer Provost explicitly asked Defendant where he had been at the time of the fire and how he had cut his hand. Although it may not have been Officer Provost's intent to elicit an incriminating response from Defendant, he should have known that by asking Defendant questions regarding his location at the time of the fire and his cut hand, Defendant would

9

naturally respond. A response is incriminating, whether it be inculpatory or exculpatory. Id. at 301. Even though Defendant's response of being "in Mission" seems to exculpate Defendant (until he states in later questioning by Officer Waln that he saw smoke coming from the home in Soldier Creek), it is nonetheless an incriminating statement under Innis. The same reasoning applies to the question posed by Officer Provost while taking the handcuffs off of Defendant's wrists. Defendant's response that he had cut himself on glass is an incriminating response and therefore is inadmissible as substantive evidence.

As discussed above, the totality of the circumstances surrounding the custodial interrogation do not support a finding that the statements were involuntary. A voluntary statement, albeit made without the necessary waiver of Miranda rights, will be admissible for impeachment purposes. Therefore, it is the finding of this Court that the responses that he was in Mission and that he cut his hand on some glass may be admissible at trial as impeachment evidence if Defendant testifies.

2. Other Statements

Those statements made that were not in response to or the product of interrogation are admissible at trial, both as substantive evidence and as impeachment evidence, with or without Miranda warnings. See United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) ("Voluntary statements not in response to an interrogation are admissible with or without Miranda warnings."). As Defendant was escorted from the residence, he told Black Lance four to five times to "tell them I didn't do it." When advised of his Miranda rights, Defendant stated that he understood them. He then stated, "even if I didn't do it." These statements were not in response to or a product of custodial interrogation.

As discussed above, interrogation occurs not only when a police officer engages in express questioning, but also its functional equivalent, that is, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 300-01. The Supreme Court in Innis created a carve-out for those actions by police officers which evoke a response from a defendant but are "normally attendant to arrest and custody." Id.

at 301. Advising a defendant of his Miranda rights not only is normally attendant to arrest and custody, but also is a pre-requisite to admissibility of custodial interrogations. Therefore, this Court finds that Officer Provost's act of reading Defendant his Miranda rights and asking if he understood them was not the functional equivalent of express questioning. Officer Waln's conduct of escorting Defendant near Black Lance in proceeding to the police car should not be characterized as the functional equivalent of interrogation. Even when an officer might expect a defendant to make a voluntary statement to another, the mere expectation does not qualify as the deliberate elicitation of an incriminating response. See United States v. Hernandez-Mendoza, 2010 WL 1286749, No. 083898, at 4 (8th Cir. 2010) (finding that the act of leaving two defendants alone in his police cruiser with a recording device activated was not the functional equivalent of express questioning, reasoning that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself") (quoting Arizona v. Mauro, 481 U.S. 520, 529 (1987)).

As discussed in the preceding section, in light of the totality of the circumstances surrounding the statements, this Court finds that Defendant made the statements "tell them I didn't do it" and "even if I didn't do it" knowingly, intelligently, and voluntarily. See Brown, 535 F.2d at 427. Additionally, these statements were not in response to or the product of interrogation. Therefore, the statements are admissible as both substantive evidence and impeachment evidence.

Based upon the foregoing, it is hereby

ORDERED that the Report and Recommendation (set forth orally on the record and at Doc. 38) is adopted. It is further

ORDERED that Defendant's Motion to Suppress (Doc. 20) is granted in part and denied in part.

Dated April 19, 2010.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE